NOT DESIGNATED FOR PUBLICATION

No. 115,345

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN A. MURRIN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed February 17, 2017. Affirmed; cross-appeal dismissed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., ARNOLD-BURGER and BRUNS, JJ.


*Per Curiam*:  Brian A. Murrin appeals his convictions for possession of marijuana and possession of drug paraphernalia following a jury trial. Murrin claims two points of error:  (1) the district court should have granted his request for appointment of new counsel and (2) the evidence was insufficient to sustain his convictions. In a cross-appeal, the State claims the district court's decision to grant Murrin a sentence of probation was illegal because that sentence failed to conform to the applicable statutory provision, which under the facts presented here consists of a special sentencing rule that requires the court to impose a presumptive term of prison without the possibility for dispositional

departure. For the reasons stated below, we find no merit to the claims presented by Murrin or the State on appeal. Accordingly, we affirm Murrin's convictions.

FACTS

On March 19, 2015, Clay Center Police Officer Billy Smith was on routine patrol in Clay Center when he observed Murrin drive a green minivan past him in the opposite direction. Smith knew Murrin and suspected that his license was revoked, so he called dispatch to confirm. After dispatch confirmed that Murrin's license was revoked, Smith turned around and tried to locate and follow Murrin. Smith caught up with Murrin at the Clay County Hospital. Murrin had parked the minivan in the hospital parking lot and was walking toward the building. Smith approached Murrin to ask for his driver's license and proof of insurance and noticed the odor of marijuana coming from Murrin. When Murrin opened the door to his minivan, Smith smelled a stronger odor of marijuana coming from the vehicle. When asked about the odor, Murrin said he was not aware of anything in his possession or in his minivan that would answer Murrin's question about the smell. Smith arrested Murrin for driving on a revoked license and requested a canine unit to the scene for investigation.

The canine officer arrived and walked the dog around the vehicle. The dog alerted at the front driver-side door. Officers searched the van and discovered a glass smoking device in the pocket of a jacket on the front passenger seat. Smith recognized the pipe as a smoking device commonly used for marijuana. Smith also noted that the pipe smelled of marijuana. He sent the pipe to the Kansas Bureau of Investigation laboratory for testing. The results of the test indicated that it contained THC, the active ingredient in marijuana. The State ultimately charged Murrin with possession of marijuana, possession of drug paraphernalia, and driving while suspended.

A jury convicted Murrin on all three criminal charges. Murrin's presentence investigation (PSI) report reflected that three special rules applied to him. Relevant here is Rule 26, which provides that a sentence will be presumptive imprisonment in the case of a third or subsequent felony drug possession pursuant to K.S.A. 2015 Supp. 21-6805(f)(1). Before sentencing, Murrin filed a motion for border box probation. Because this was Murrin's third or subsequent felony drug possession, Murrin's guideline sentence did not fall in the presumptive prison/probation border box but instead fell in the presumptive prison box. As such, the district court construed Murrin's motion for border box probation as a motion for dispositional departure. After hearing argument at Murrin's sentencing hearing, the district court ultimately granted Murrin's motion for dispositional departure and sentenced him to 12 months' probation with an underlying 30-month prison term.

After sentencing, the State filed a motion to correct an illegal sentence. In support of its motion, the State argued K.S.A. 2015 Supp. 21-6805(f)(1) does not permit a district court to depart from a presumptive prison sentence when Rule 26 applies. Murrin responded, arguing that the sentence was not illegal because the district court was within its discretion to grant a dispositional departure from a presumptive prison sentence upon finding that substantial and compelling reasons support departure. The district court heard argument and denied the State's motion.

ANALYSIS

*Request for new counsel*

Murrin argues the district court abused its discretion in denying his request for new counsel. On the first day of trial, but before the jury had been selected, Murrin told the court that he wanted a new attorney. The court heard Murrin's several concerns and then heard counsel's responses to those concerns. After this discourse, the court denied

3

the motion. On appeal, Murrin contends that the district court erred in denying his motion and, as a remedy for this error, seeks reversal of his convictions.

We review for an abuse of discretion the decision of a district court to deny a motion to appoint new counsel. *State v. Staten*, 304 Kan. 957, 970, 377 P.3d 427 (2016). A district court abuses its discretion if its action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the trial court; (2) is based on an error of law; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). If the district court has a reasonable basis to conclude that counsel could provide "'"effective aid in the fair presentation of a defense,"'" then it cannot be found to be an abuse of discretion. *State v. Sappington*, 285 Kan. 176, 196, 169 P.3d 1107 (2007). The burden of proof is on the party alleging that the court abused its discretion. *State v. Wells*, 289 Kan. 1219, 1227, 221 P.3d 561 (2009).

A defendant has a right to effective assistance of counsel during all critical stages of his or her criminal proceeding under the Sixth Amendment to the United States Constitution. While the right to effective assistance of counsel does not include the right to one's counsel of choice, Kansas law recognizes that an indigent criminal defendant may be entitled to appointment of a different lawyer under certain circumstances. See *Staten*, 304 Kan. at 970.

> "To warrant substitute counsel, a defendant must show justifiable dissatisfaction with appointed counsel. Justifiable dissatisfaction sufficient to merit substitution of counsel includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the attorney and the defendant." *State v. Jasper*, 269 Kan. 649, Syl. ¶ 1, 8 P.3d 708 (2000).

Upon a showing of justifiable dissatisfaction, the district court must inquire to assess the factual circumstances of the attorney-client relationship. *State v. Brown*, 300 Kan. 565, 577, 331 P.3d 797 (2014). Our Supreme Court recently articulated the three possible errors that may result from the district court's inquiry:

"The first type of error occurs when a district court becomes aware of a potential conflict of interest but fails to conduct an inquiry. Such a failure constitutes an error of law, that is, a failure to follow the law and fulfill a legal duty. The second type of error occurs when a district court conducts an inquiry but fails to do so in an appropriate manner. An appropriate inquiry requires *fully* investigating both the basis for the defendant's dissatisfaction with counsel and the facts necessary for determining whether the dissatisfaction justifies appointing new counsel. The third type of error may occur when a district court conducts an appropriate inquiry but fails to make a decision that is reasonable in light of the facts that come to the fore. [Citation omitted.]" *Staten*, 304 Kan. at 971.

Here, Murrin first argued to the district court that he had a conflict of interest with his attorney. Murrin claimed counsel "sent [him] to prison in 2007 on [his] very first possession of marijuana" and told him to take a plea or he would go to prison in a 2013 DUI case and a 2014 jury trial case. Murrin also told the court that he previously had fired his counsel and wanted to fire him again in this case. After Murrin was done, the district court asked Murrin's attorney to respond to the allegations of a conflict of interest. Murrin's attorney said he did not remember a 2007 case, but he did remember representing Murrin in a prior case. Although Murrin initially received probation in the case he remembered, Murrin ultimately violated the terms of probation and the court revoked probation, imposed the underlying sentence, and ordered Murrin to the custody of the Kansas Department of Corrections. Regarding the DUI case, Murrin's attorney said he did not threaten Murrin to take a plea or go to prison, but rather made clear that if Murrin pled to DUI, Murrin would be looking at a mandatory 90 days in the Clay County Jail. Finally, counsel told the court that he had recently represented Murrin in a 2014 jury

5

trial case in which Murrin was convicted of possession of marijuana and possibly criminal trespass. The court then confirmed that Murrin's attorney successfully argued in favor of and received probation as a sentence for Murrin in that border box case.

Conflicts of interest are evaluated on the specific facts of each case. Generally, a conflict exists when "an attorney is placed in a situation conducive to divided loyalties." *Staten*, 304 Kan. at 970. Here, the only fact presented by Murrin to support a conflict of interest between he and his attorney is that the attorney who represents him in this case represented him in past cases where he was unhappy with the outcome. Significantly, Murrin does not provide any facts to establish that his attorney ineffectively represented him in the past. And even if he had provided facts to establish his attorney provided ineffective representation in the past, Murrin has provided no facts to establish the alleged ineffective representation caused him to suffer prejudice. And finally, even if he had established ineffective representation in the past that caused him to suffer prejudice, Murrin has failed to provide any facts to establish how that fact is any way related to a conflict of interest or divided loyalties as his attorney represents him in the current case.

Moreover, the district court noted that the case had been going on for some time and the first day of trial was the first time he had heard Murrin express issues with his attorney. Yet the conflicts Murrin alleged occurred before the commencement of this case and could have been addressed at several points before trial, such as when his counsel was appointed or at the preliminary hearing. The court also reminded the parties that the same defense counsel represented Murrin in a jury trial less than 3 months prior to this case, that he was a competent attorney, and that the standard for the court was to ensure that Murrin was receiving competent representation.

Murrin also argued to the district court that there was a breakdown in communications. Specifically, Murrin claimed he asked his counsel for court papers, cases, and charges filed against him, none of which were provided to him. In response,

6

defense counsel told the court Murrin failed to keep in touch with him, and counsel had to track Murrin down by calling his wife or his probation officer. Counsel told the court that Murrin moved to different cities to attend different treatment centers twice without informing him, and that he believed Murrin was unable to get information due to Murrin's failure to work diligently with him, not because counsel lacked interest in the case. Upon inquiry by the district court, counsel confirmed that he was prepared to go forward with the case and that he did not believe the line of communication had broken down to the point that he could not competently represent Murrin.

When reviewing a claim that a breakdown in communication between client and counsel has arisen, this court focuses on whether the attorney provided appropriate representation in the adversarial process, not on the relationship between attorney and client. *State v. Pfannenstiel*, 302 Kan. 747, 761-62, 357 P.3d 877 (2015). In his argument that there was a breakdown in communication, Murrin did not explain how his attorney's inability to find his current location negatively affected the ability of his attorney to represent him or prepare for trial. In fact, his attorney confirmed that—despite Murrin relocating several times without leaving a forwarding address or contact information— Murrin's attorney knew the facts of the case and was prepared to go forward with trial.

The district court did not abuse its discretion in declining to appoint new counsel to represent Murrin. Upon becoming aware of Murrin's allegation that a conflict of interest existed with his attorney, the court fully heard Murrin's allegations before starting trial. The court inquired from both Murrin and his counsel to determine the factual basis for the claims. Finally, the court's decision to deny Murrin's request for new counsel was reasonable in light of the facts addressed at the hearing.

*Sufficiency of the evidence*

In his second argument on appeal, Murrin asserts there was insufficient evidence to support his convictions of possession of marijuana and possession of drug paraphernalia. Specifically, Murrin argues the State failed to present evidence he had knowledge of the presence of the pipe and its contents in the pocket of the jacket in his vehicle.

> "When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.] An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citation omitted.]" *State v. Brooks*, 298 Kan. 672, 688-89, 317 P.3d 54 (2014).

To convict a person of drug possession or possession of drug paraphernalia, the State must show that he or she had control over the contraband and that he or she did so with knowledge and intent to have such control. See K.S.A. 2015 Supp. 21-5706(b)(3); K.S.A. 2015 Supp. 21-5709(b)(2); K.S.A. 2015 Supp. 21-5701(q) (defining "'[p]ossession'" as "control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control"). The State may constructively show possession of contraband where the drug is kept in a place where the defendant has some measure of access and right of control. *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989). There is no distinction between direct and circumstantial evidence in terms of probative value. *State v. Keel*, 302 Kan. 560, 566-67, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016).

Contrary to Murrin's assertion, we find the State presented substantial evidence that would allow a reasonable juror to conclude Murrin knew about the marijuana and

paraphernalia in his vehicle. Officer Smith smelled the odor of marijuana on Murrin's person and asked him for his driver's license and proof of insurance. When Murrin opened the door to his minivan, the odor of marijuana also came out of the vehicle. After a dog alerted at the door to the minivan, officers found the glass pipe in the front passenger seat of Murrin's vehicle, which tested positive for THC. Although Murrin argues the State failed to provide evidence that the jacket on the front passenger seat where the glass pipe was found was a men's jacket or was Murrin's size, the jury is not required to believe that Murrin would have worn the jacket in order to find that the marijuana and paraphernalia found in the jacket belonged to Murrin. To that end, Murrin does not dispute that he was the only person in the vehicle. A verdict may be supported by circumstantial evidence if the evidence provides a basis from which the factfinder may reasonably infer the existence of the fact in issue. Circumstantial evidence need not exclude every other reasonable conclusion or inference. *State v. Scaife*, 286 Kan. 614, 618, 186 P.3d 755 (2008).

The jury heard Officer Smith's testimony about the incident, including the fact that Murrin denied ownership of the marijuana and glass pipe. The fact that the jury convicted Murrin reflects the jury's decision to draw a conclusion that Murrin did knowingly possess the contraband based on the evidence presented by the State in this case. Murrin essentially asks this court to reweigh the evidence and come to a different conclusion based on his statement that he did not know that the contraband was in his vehicle. It is not the function of this court to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Lowrance*, 298 Kan. 274, 296, 312 P.3d 328 (2013).

The evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational factfinder to conclude that Murrin was aware of the marijuana and drug paraphernalia in his vehicle, allowing the inference that he possessed the contraband at the time of his arrest.

9

*Departure or illegal sentence*

In its cross-appeal, the State claims the district court's decision to grant Murrin a dispositional departure from a sentence of presumptive prison to 12 months' probation is illegal and must be vacated. In support of its claim, the State argues the facts presented in this case triggered a special sentencing rule that required the court to impose a presumptive term of prison without the possibility for dispositional departure. The State contends the court's failure to conform to that special rule necessarily means that Murrin's sentence of probation—which resulted from the sentencing court's failure to conform to the statute's special rule of presumptive prison without the possibility for dispositional departure—is illegal.

Once a sentence is pronounced from the bench, the district court does not have jurisdiction to modify it. *State v. McCoin*, 278 Kan. 465, 468, 101 P.3d 1204 (2004). The general rule prohibiting a district court from modifying a sentence after it is pronounced applies only to a legal sentence. *State v. McKnight*, 292 Kan. 776, 779, 257 P.3d 339 (2011); see *State v. Ballard*, 289 Kan. 1000, 1010-11, 218 P.3d 432 (2009). An illegal sentence may be corrected at any time. K.S.A. 22-3504(1).

Whether a sentence is illegal is a question of law over which this court exercises unlimited review. *State v. Moncla*, 301 Kan. 549, 551, 343 P.3d 1161 (2015). Our Supreme Court has defined "illegal sentence" under K.S.A. 22-3504 as:

> "'(1) a sentence imposed by a court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served. [Citations omitted.]'" 301 Kan. at 551.

10

The term of authorized punishment is determined under the revised Kansas Sentencing Guidelines Act (KSGA). K.S.A. 2015 Supp. 21-6805 governs sentencing for drug crimes. At issue in this case is a special rule in that statute, K.S.A. 2015 Supp. 21-6805(f)(1), which requires that a sentence be presumptive prison after a person's third or subsequent drug conviction. That statute states, in relevant part:

> "The sentence for a third or subsequent felony conviction of K.S.A. 65-4160 or 65-4162, prior to their repeal, K.S.A. 2010 Supp. 21-36a06, prior to its transfer, or K.S.A. 2015 Supp. 21-5706, and amendments thereto, shall be a presumptive term of imprisonment and the defendant shall be sentenced to prison as provided by this section. The defendant's term of imprisonment shall be served in the custody of the secretary of corrections in a facility designated by the secretary." K.S.A. 2015 Supp. 21-6805(f)(1).

Had this been Murrin's first or second felony conviction for possession of marijuana and the rule set forth above not applied, Murrin's criminal history score and current crimes of conviction would have placed him in a border box for sentencing. Perhaps for this reason, Murrin filed a motion seeking a sentence of probation within a border box. Recognizing that Murrin's criminal history triggered the special rule shifting the guideline sentence from border box to presumptive prison, however, the district court construed Murrin's motion as a request for dispositional departure from a presumptive prison sentence. Under the KSGA, a district court may depart from a presumptive sentence upon finding substantial and compelling reasons to do so. K.S.A. 2015 Supp. 21-6815(a) provides in relevant part:

> "[T]he sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

11

The court then went on to find substantial and compelling reasons for a departure. On appeal, the State does not challenge the reasons given by the court for departing as unsubstantial or noncompelling. In fact, the State's argument is not even tied to the particular facts of this case. Instead, the State broadly argues that in cases where the special rule in K.S.A. 2015 Supp. 21-6805(f)(1) applies, the general rule that a sentencing court may depart from a presumptive sentence does not apply. Statutory interpretation involves a question of law over which appellate review is unlimited. *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005). The fundamental rule in statutory interpretation is to give effect to the legislative intent as it is expressed in the statute. When a statute is clear and unambiguous, this court must apply the statute's intent as expressed in the plain language. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014). Ordinary words are to be given their ordinary meaning, and this court must not read into the statute language that is not found in it or exclude language that is found in it. *State v. Paul*, 285 Kan. 658, 661, 175 P.3d 840 (2008). The provisions of a statute must be construed in pari materia, with a view toward bringing the various provisions into workable harmony if possible. *Keel*, 302 Kan. at 573-74.

We begin with the language of the statute itself. K.S.A. 2015 Supp. 21-6805(f)(1) states that the sentence for a third or subsequent felony drug possession conviction "shall be a presumptive term of imprisonment." A "'presumptive sentence'" is defined in the KSGA as "the sentence provided in a grid block for an offender classified in that grid block by the combined effect of the crime severity ranking of the offender's current crime of conviction and the offender's criminal history." K.S.A. 2015 Supp. 21-6803(q). But the KSGA allows the sentencing judge to depart from a presumptive sentence upon finding substantial and compelling reasons. K.S.A. 2015 Supp. 21-6815(a). The plain language of the special rule in K.S.A. 2015 Supp. 21-6805(f)(1) mandates a "presumptive prison" sentence, which read in pari materia within the KSGA means that the sentence must be prison unless the sentencing court finds substantial and compelling reasons to depart.

12

But the State argues the language in K.S.A. 2015 Supp. 21-6815(a) permitting the departure from a presumptive sentence upon a finding of substantial and compelling reasons is not applicable in cases where the special rule in K.S.A. 2015 Supp. 21-6805(f)(1) applies. The State's argument that K.S.A. 2015 Supp. 21-6805(f)(1) prohibits departure is rooted in the word "shall":  the State emphasizes the statutory language that the sentence *shall* be presumptive imprisonment, the defendant *shall* be sentenced as provided in that section, and the term of imprisonment *shall* be served in the custody of the secretary of corrections. According to the State, such mandatory language requires the sentence to be served in prison and strips the district court of jurisdiction to depart when the rule applies. The State contrasts this language with other special rules that merely state that the sentencing court "may" impose imprisonment in certain circumstances. See, *e.g.*, K.S.A. 2015 Supp. 21-6604(f)(1) (crime committed while on felony probation); K.S.A. 2015 Supp. 21-6604(f)(4) (crime committed while on felony bond). Finally, the State argues that K.S.A. 2015 Supp. 21-6805(f)(1) is a more specific statute than K.S.A. 2015 Supp. 21-6815 and therefore should apply where those statutes mandate different outcomes.

In support of its argument, the State cites *State v. Currie*, 49 Kan. App. 2d 499, 308 P.3d 1289 (2013). In *Currie*, a panel of this court held that a special rule similar to the one here did *not* prohibit departure from a presumptive sentence as long as there was a finding of substantial and compelling reasons to do so. Obviously, this holding is not the outcome sought by the State here; instead, the State cites *Currie* for the sole purpose of distinguishing it from the facts presented and applicable law in this case. The defendant's sentence in *Currie* was subject to K.S.A. 2012 Supp. 21-6804(p), which states that the sentence for a defendant's third or subsequent burglary conviction "shall be presumed imprisonment and the defendant shall be sentenced to prison as provided by this section." The district court decided it did not have jurisdiction to hear a departure motion because that rule mandated a presumptive prison term. 49 Kan. App. 2d at 500-

02. On appeal, a panel of this court reversed, concluding that the district court *did* have authority to depart from Currie's presumptive prison sentence:

> "We believe that K.S.A. 2012 Supp. 21-6804(p) merely directs that the sentence shall be presumptive prison when a defendant has prior felony theft and/or burglary convictions. It does not negate the other provisions in the statute allowing for departure. It uses the term 'presumed' imprisonment. Giving ordinary words their ordinary meaning, as we are required to do, this would indicate that prison is only presumed, but not mandatory. Although K.S.A. 2012 Supp. 21-6804(p) follows this with a clause unique to subsection (p) ('and the defendant shall be sentenced to prison as provided by this section'), we believe this simply refers the reader back to the sentencing grid." 49 Kan. App. 2d at 503-04.

The State argues that the court's analysis in *Currie* regarding departure from a presumptive sentence highlights two critical distinctions between the court's authority to depart under K.S.A. 2015 Supp. 21-6804(p) and its authority to do so under K.S.A. 2015 Supp. 21-6805(f)(1). First, the State points out that K.S.A. 2015 Supp. 21-6804(p) falls under the nondrug sentencing statute—K.S.A. 2015 Supp. 21-6804—and subsection (d) of that statute specifically states that presumptive punishments are subject to the sentencing court's discretion to enter a departure sentence if the court finds substantial and compelling reasons to do so. But K.S.A. 2015 Supp. 21-6815(a) applies to both K.S.A. 2015 Supp. 21-6804 and K.S.A. 2015 Supp. 21-6805 equally. The lack of the same redundant language specifically within K.S.A. 2015 Supp. 21-6805 does not make K.S.A. 2015 Supp. 21-6815(a) less applicable to that section. And, as the *Currie* court correctly noted, the discretion provided by K.S.A. 2012 Supp. 21-6804(d) is consistent with K.S.A. 2012 Supp. 21-6815(a), which similarly provides that presumptive punishments are subject to the sentencing court's discretion to enter a departure sentence. 49 Kan. App. 2d at 503. The second distinction noted by the State is the additional language in K.S.A. 2015 Supp. 21-6805(f)(1) that is not found in K.S.A. 2015 Supp. 21-6804(p): "The defendant's term of imprisonment shall be served in the custody of the

14

secretary of corrections in a facility designated by the secretary." But there is no reason to interpret this phrase any differently than the similar phrase immediately preceding it—the defendant shall be sentenced to prison as provided by this section—which, as was discussed above, simply directs the court to follow the sentencing grid. See *Currie*, 49 Kan. App. 2d at 504.

Based on the reasons set forth by the court in *Currie* with regard to K.S.A. 2015 Supp. 21-6804(p), we find K.S.A. 2015 Supp. 21-6805(f) merely directs that any sentence to which it applies shall be a "presumed" imprisonment term, subject to the district court's discretion to depart upon a finding of substantial and compelling reasons to do so pursuant to K.S.A. 2015 Supp. 21-6815(a). The judge in this case noted, "I think it's pretty simple, it's presumptive. If it wasn't supposed to be presumptive it'd just say prison. It's presumptive, and the Court, I believe, has inherent authority and I will adopt the defendant's positions in their brief." Because the district court had authority to sentence Murrin to 12 months' probation, we conclude the sentence Murrin was ordered to serve was not illegal. Accordingly, we have no jurisdiction to modify or vacate it as requested by the State. See *McCoin*, 278 Kan. at 468 (once sentence is pronounced from bench, court does not have jurisdiction to modify it).

Murrin's convictions are affirmed, and the State's cross-appeal is dismissed.