. No. 76,164

STATE OF KANSAS, *Appellee*, v. LESLIE DAVIS, *Appellant*.

(941 P.2d 946)

Opinion filed
July 11, 1997.

*Edward G. Collister, Jr.,* special appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with him on the brief for appellant.

*Julie A. McKenna*, county attorney, argued the cause, and *Thomas R. Stanton*, assistant county attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a durational departure sentence appeal. Defendant Leslie Davis pled guilty to: (1) possession of cocaine with the intent to sell, a drug severity level 3 felony, in violation of K.S.A. 1994 Supp. 65-4161(a); and (2) possession of proceeds derived from a violation of the Uniform Controlled Substances Act (UCSA), K.S.A. 65-4101 *et seq*., a severity level 7 nonperson felony under K.S.A. 1994 Supp. 65-4142. Our jurisdiction arises from K.S.A. 21-4721(a) (departure sentence appeal) and K.S.A. 20-3018(c) (transfer on this court's order).

The issue is whether the district court erred in imposing a durational departure sentence. We find no error and affirm.

## FACTS

The Salina police, with a search warrant, conducted the search that led to Davis' arrest. They found approximately 5 ounces (135 grams) of rock cocaine in five plastic baggies, $3,000 in cash, a box of plastic sandwich baggies in his motel room, and 49 plastic sandwich baggies in a trash can with the bottom corners of the baggies cut off. Davis' car was also searched, revealing a pager and a cellular phone. He was arrested and charged in a four-count complaint.

Davis entered guilty pleas to the first two counts in exchange for the State's dismissal of the remaining counts and an agreement not to request any departure that would result in a total sentence beyond 29 months. According to the State, assuming Davis' criminal history was category I (no prior criminal record), 29 months would be the maximum guidelines sentence that could be imposed if the sentences for the first two counts were imposed consecutively.

The State filed a motion for durational departure or consecutive sentence (durational departure sentence of 29 months on count 1, or in the alternative, consecutive sentences on counts 1 and 2 totaling 29 months). The following grounds for departure were asserted:

"1. These crimes were committed as part of a major organized drug delivery activity.

"2. The defendant derived a substantial amount of money or asset ownership from the illegal drug sale activity.

"3. The defendant was in possession of packaging material at the time of his arrest.

"4. The defendant was in possession of telecommunication equipment used in the large-scale distribution of drugs and controlled substances.

"5. The defendant was in possession of a large amount of cocaine at the time of his arrest.

"6. The defendant engaged in repeated criminal acts associated with the delivery of cocaine."

Lieutenant Mike Marshall, an experienced narcotics investigator, testified at the sentencing hearing about how rock cocaine was sold in the Salina area. He estimated that approximately 500 or

more doses, or "rocks," could have been sold from the amount of rock cocaine found, at a price of $50 to $100 per rock. A rock is typically sold by placing it in the corner of a plastic baggie and cutting off the corner. He estimated that 98 rocks had been placed in the 49 corner baggies for sale. He characterized this case as "one of our pretty large cases here in Salina." Lt. Marshall described how the pager and cellular phone would typically be used in a cocaine transaction. On cross-examination, he admitted that it was not unusual to find equipment such as cellular phones and pagers in a large portion of the cocaine cases he had investigated. He also admitted that the amount of cocaine found was not unusual, but reiterated that it was a large amount for the area. He stated: "I mean, there is other areas in the bigger cities where you get probably those amounts."

Davis' attorney argued that the State had not shown that the crimes were committed as part of a major organized drug delivery activity. Counsel emphasized that Davis was a "youthful offender" with no prior criminal record, who had taken responsibility for his acts and thus should receive probation. We disagree.

Although the State asserted that the $3,000 found in Davis' motel room would support a finding that Davis derived a substantial amount of money from the illegal drug sale activity, the district judge made no such finding on the record. The judge found that Davis, at the time of his arrest, was in possession of packaging materials, telecommunication equipment used in large-scale distribution of drugs and controlled substances, and a large amount of cocaine. The district court concluded that the crimes "were committed as part of a major organized drug delivery activity as defined under Kansas law." Probation was denied and a durational departure sentence of 24 months imprisonment imposed for the possession of cocaine with intent to sell offense. A concurrent sentence of 12 months for the possession of proceeds derived from violation of the UCSA offense was entered.

## DISCUSSION

In an appeal from a departure sentence, we must determine under K.S.A. 21-4721(d) whether the sentencing court's findings

of fact and reasons justifying departure (1) are supported by substantial competent evidence and (2) constitute substantial and compelling reasons for departure as a matter of law. K.S.A. 21-4721(d)(1) requires an evidentiary test—are the facts stated by the sentencing court in justification of departure supported by the record? K.S.A. 21-4721(d)(2) requires a law test—are the reasons stated on the record for departure adequate to justify a sentence outside the presumptive sentence? See *State v. Valentine*, 260 Kan. 431, 438, 921 P.2d 770 (1996).

K.S.A. 21-4717 lists aggravating factors that may be considered in determining whether substantial and compelling reasons for departure exist for drug crimes. K.S.A. 21-4717(a)(1) provides as one aggravating factor that the crime was committed "as part of a major organized drug manufacture, production, cultivation or delivery activity." The statute lists several nonexclusive factors, two or more of which will "constitute evidence of major organized drug manufacture, production, cultivation or delivery activity."

The district court found two of the K.S.A. 21-4717(a)(1) factors present, (D) and (F). Davis was in possession of packaging materials and telecommunication equipment used in the large-scale distribution of drugs and controlled substances, K.S.A. 21-4717(a)(1)(D). Although telecommunication equipment is not listed in the statute, "distribution materials," mentioned in the statute, are not limited to the items listed. The plastic baggies constitute "packaging material" listed in the statute. Davis was in possession of a large amount of cocaine at the time of his arrest, with a street value of between $25,000 to $50,000. K.S.A. 21-4717(a)(1)(F).

K.S.A. 21-4717 states:

"(a) The following aggravating factors, which apply to drug crimes committed on or after July 1, 1993, under the sentencing guidelines system, may be considered in determining whether substantial and compelling reasons for departure exist:

"(1) The crime was committed as part of a major organized drug manufacture, production, cultivation or delivery activity. Two or more of the following nonexclusive factors constitute evidence of major organized drug manufacture, production, cultivation or delivery activity:

. . . .

· "(D) The presence of manufacturing or distribution materials such as, but not limited to, drug recipes, precursor chemicals, laboratory equipment, lighting, irrigation systems, ventilation, power-generation, scales or packaging material.

. . . .

"(F) Possession of large amounts of illegal drugs or substantial quantities of controlled substances."

Davis argues that the legislature intended departure sentences to be imposed only in "unusual" cases and contends that the district court's subjective conclusion should not prevail over the objective conclusion of Lt. Marshall that the amount of cocaine found was not an "unusual" amount. Although Lt. Marshall admitted that this amount was not unusual, he did testify that it was a large amount for the Salina area. We agree with the district court's conclusion, which was based on Lt. Marshall's observation.

Davis suggests that his sentence is contrary to one of the purposes of the sentencing guidelines, *i.e.*, to standardize sentences. He implies that while his drug crimes may appear major in a rural community, they might not be in Kansas City. However, he fails to show that his crimes would be considered less than major drug crimes, even in Kansas City.

K.S.A. 21-4717(a)(1)(F) speaks of "large amounts of illegal drugs or substantial quantities of controlled substances"—not "unusual amounts" or "unusually large amounts." Whether an amount is "unusual" is not the criterion set forth in the statute. A sufficient quantity of rock cocaine to supply 500 $50 to $100 sales seems large under any standard, rural or urban.

The State's suggestion that the "analysis should be made on the harm done by the sale of that amount of cocaine, not on where the sale occurs," is well taken. As the district judge said: "[T]hose 500 rocks of cocaine are sold and cause this community and people within this community to bleed."

The district court's factual findings and reasons justifying the departure sentence are supported by substantial competent evidence and constitute substantial and compelling reasons for departure under K.S.A. 21-4717(a)(1).

However, we echo the district judge's question at the sentencing hearing: "Why does the State file motions for departure in cases

like this and take the Court's time to have them heard in the way it's presented rather than to just stake out your position for consecutive sentences?" The judge observed that if the district court imposed consecutive sentences, the sentence would not be appealable, whereas with a departure, it would be.

The district court is affirmed.