(270 P.3d 13)
No. 104,489

STATE OF KANSAS, *Appellee*, v. WADDELL WARREN, *Appellant*.

Opinion filed February 17, 2012.

*Ryan Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREENE, C.J., MARQUARDT and LEBEN, JJ.

LEBEN, J.: When a small amount of marijuana was found in inmate Waddell Warren's socks, he was convicted of introducing a controlled substance into a correctional facility and sentenced to an additional 122 months in prison. Warren asked that he be given a shorter sentence than called for under our sentencing guidelines, but the district court ruled that a lesser departure sentence—based on an argument that the amount of drugs was very small and thus less than typical for the offense—could not be considered.

We face two primary questions in deciding Warren's appeal. First, we must determine whether we have jurisdiction to consider the appeal at all. Warren received the presumptive sentence for his offense and criminal-history score, and we have no jurisdiction to review a presumptive sentence. K.S.A. 21-4721(c)(1). Second, if we do have jurisdiction, we must determine whether the district court's ruling that a less-than-guidelines sentence cannot be given based on the amount of drugs was correct.

Warren also raises a final issue—that the State failed to bring him to trial within the time limit set under the Mandatory Disposition of Detainers Act, K.S.A. 22-4301 et seq., which applies to criminal charges against inmates held in Kansas. We have found no merit to that claim since Warren had waived his speedy-trial rights and had caused a trial continuance by seeking new counsel.

I. *We Have Jurisdiction to Consider the Limited Question Presented in this Appeal, Even Though the Defendant Received a Presumptive Sentence.*

We begin with the jurisdictional question. To determine the answer, we must consider the language of K.S.A. 21-4721(c)(1) as well as the holdings in three cases: *State v. Huerta,* 291 Kan. 831, 247 P.3d 1043 (2011); *State v. Dillon,* 44 Kan. App. 2d 1138, 244 P.3d 680 (2010); and *State v. Cisneros,* 42 Kan. App. 2d 376, 212 P.3d 246 (2009).

K.S.A. 21-4721(c)(1), as it stood at the time Warren filed his appeal, provided that an "appellate court shall not review . . . [a]ny sentence that is within the presumptive sentence for the crime . . . ." As our Supreme Court explained in *Huerta,* this statutory

provision represented an intention to remove presumptive sentences from appellate review, even when appeals were based on a claim of prejudice, corrupt motive, or an error involving a constitutional right. 291 Kan. at 835-37, 838. Thus, the court instructed in *Huerta* that a presumptive sentence could not be appealed based on a claim that an individual presumptive sentence was unconstitutional for some reason. 291 Kan. 831, Syl. ¶ 3. And the court in *Huerta* specifically disapproved our decision in *Dillon*, which had considered an appeal on the basis that the district judge had refused to consider the constitutionality of the sentence. *Huerta*, 291 Kan. at 839-41.

But Warren is not raising a constitutional due-process argument or an argument that his presumptive sentence was unconstitutionally severe based on his facts. Warren instead argues that his appeal may be heard because the district court misinterpreted its sentencing options, the same argument our court ruled upon in *Cisneros*.

In *Cisneros*, the defendant initially received probation, but the probation was revoked and the defendant was sent to prison to serve his original 155-month sentence. At the probation-revocation hearing, the defendant asked the district court to enter a lesser sentence, but the judge said that was "not within my power here." 42 Kan. App. 2d at 377. In fact, however, K.S.A. 22-3716(b) allows the district court to order the defendant either to serve the original sentence "or any lesser sentence" when probation is revoked. When Cisneros appealed, the State argued that our court lacked jurisdiction to consider the appeal because Cisneros had received a presumptive sentence. But our court considered the appeal a question of statutory interpretation rather than a review of a presumptive sentence:

"Cisneros is not appealing the term or length of his sentence so much as he is appealing the district court's judgment that it had no power to reduce his sentence upon revoking his probation. This is a question of law that we have jurisdiction to consider on appeal. If we were to dismiss the appeal for lack of jurisdiction as the State requests, then Cisneros would have no remedy to determine whether the district court properly applied K.S.A. 22-3716(b) in his case." 42 Kan. App. 2d at 379.

Our court reversed, explaining that the district court had misunderstood its statutory authority. The case was remanded for resentencing, but the district court was free to enter whatever sentence it found appropriate, though it would understand on remand that the original sentence was not its only option.

If *Cisneros* is still good law, then Warren is entitled to be heard on appeal because he presents essentially the same argument that we addressed there. In *Cisneros*, the district judge said, "I don't have the power to lower [the sentence]. That is not within my power here." 42 Kan. App. 2d at 377. But under the applicable statute, K.S.A. 22-3716(b), the district judge in *Cisneros did* have the power to give Cisneros a lesser sentence upon revoking his probation. In Warren's case, the district judge also held that he did not have the power to reduce Warren's sentence. Warren's judge identified the question of whether the small amount of drugs can be "a legally sufficient reason" to depart, but concluded, "I do not believe that meets the statutory factor, or factors[,] and [is] legally sufficient to constitute a substantial and compelling reason for departure, the amount of drugs involved." And in Warren's case, as in *Cisneros*, Warren makes the argument that under the applicable statute, K.S.A. 21-4716(c)(1)⟨E⟩, the judge in Warren's case *did* have the power to give him a lesser sentence.

In both Warren's case and in *Cisneros*, then, the appeal was based on the claim that the district court misinterpreted a statute and thus unduly limited its own statutory authority when sentencing the defendant. We see no meaningful distinction between the two cases, so we must now determine whether *Cisneros* is still good law given the Kansas Supreme Court's decision in *Huerta*. We must determine the jurisdictional issue before addressing the merits of Warren's claim. *Huerta*, 291 Kan. at 840-41.

The rulings made in *Huerta* do not undermine the continued validity of *Cisneros*. In *Huerta*, the court decided three issues: (1) the lack of appellate jurisdiction to consider an appeal of a presumptive sentence under K.S.A. 21-4721(c)(1) does not violate equal-protection rights; (2) the defendant had abandoned any due-process challenge to K.S.A. 21-4721(c)(1); and (3) a criminal defendant's claim that the sentence amounts to some constitutional

violation does not give the defendant the right to appeal a presumptive sentence. 291 Kan. 831, Syl. ¶¶ 1-3. None of these rulings deals with the question that was presented in *Cisneros*, which was whether an appellate court may set aside a sentence and order reconsideration of the sentence by the district court when that court has explicitly misinterpreted its own statutory sentencing authority.

But we must also consider some comments made about *Cisneros* in one section of the *Huerta* opinion. In that section, the *Huerta* court was considering—and disapproving—our court's opinion in the *Dillon* case. In *Dillon*, our court had ruled that when a defendant asks for a departure sentence on constitutional grounds and the district court explicitly refuses to consider that argument, the sentence may be set aside and the case sent back for resentencing because the court had denied due process to the defendant. 44 Kan. App. 2d 1138, Syl. ¶ 2. But our Supreme Court disagreed and announced its disapproval of *Dillon* in *Huerta*, where it also said that the *Dillon* court had been wrong to rely upon *Cisneros* as part of the rationale for the *Dillon* ruling:

"*Dillon* also relied on a prior Court of Appeals decision, *State v. Cisneros*, 42 Kan. App. 2d 376, 212 P.3d 246 (2009), which it read to grant appellate jurisdiction to review a presumptive sentence when the district judge had misunderstood the limits of his or her discretion in sentencing after a revocation of probation. *Dillon*, 44 Kan. App. 2d at 1145. In *Cisneros*, the defendant appealed because the district judge believed he had no power to reduce Cisneros' sentence upon a probation revocation, despite language to the contrary in K.S.A. 22-3716(b). The Court of Appeals determined that this was a question of law over which it had jurisdiction. 42 Kan. App. 2d at 379. The court went on to state that, if it dismissed Cisneros' appeal for lack of jurisdiction under K.S.A. 21-4721(c)(1), 'then Cisneros would have no remedy to determine whether the district court properly applied K.S.A. 22-3716(b) in his case.' 42 Kan. App. 2d at 379. *Cisneros* is plainly factually and procedurally distinct from the situation before the Court of Appeals in *Dillon*, and *Dillon*'s reliance on *Cisneros* was misplaced." *Huerta*, 291 Kan. at 840.

To be sure, our Supreme Court indicated that our court had been wrong to rely upon the *Cisneros* holding as a basis for our conclusion in *Dillon* that a presumptive sentence could sometimes be appealed if the district court had refused to consider a potentially viable constitutional issue at sentencing. But the *Dillon* case pre-

sented a different question than presented in *Cisneros*, and the *Huerta* court does not make any criticism of the *Cisneros* holding. Indeed, another panel of our court concluded that "[t]he *Huerta* court, by specifically distinguishing *Cisneros* from *Dillon*, tacitly approved the jurisdictional exception set forth in *Cisneros*." *State v. Monroe*, No. 104,822, 2011 WL 6942941, at *3 (Kan. App. 2011) (unpublished opinion).

We conclude that the rationale of *Cisneros* is solid and that its holding has not been undercut by the *Huerta* decision. In both *Huerta* and *Dillon*, the defendants sought appellate review based on a constitutional claim, while in both *Cisneros* and in Warren's case the defendants seek review only regarding a misinterpretation allegedly made by the district court of its own authority under the sentencing statutes. We therefore have jurisdiction to consider the limited argument made here by Warren—that the district court wrongly interpreted its statutory sentencing authority and therefore refused to consider matters before it that were potentially relevant to the sentence.

II. *The District Court Could Have Given Warren a Downward-Departure Sentence But Wrongly Refused to Consider That Possibility Because It Misinterpreted a Sentencing Statute.*

We turn then to the merits of the appeal—whether the district court had statutory authority to consider Warren's request for a lesser sentence. The sentencing guidelines called for one of three sentences: 122 months (the mitigated sentence), 130 months (the standard sentence), or 136 months (the aggravated sentence). The district court chose the mitigated number, 122 months.

Warren had asked for a downward-durational-departure sentence of 40 months based on his claim that the degree of harm was less than typical because the amount of drugs involved was so small. K.S.A. 21-4716(c)(1)(E) allows a departure sentence when "[t]he degree of harm . . . attributed to the current crime of conviction was significantly less than typical for such an offense." But the district court held that it had no authority to depart based on the amount of drugs because the statute prohibits any contraband in a prison and no specific amount threshold is found in the statute.

The question we must address is whether a lesser, or departure, sentence can ever be granted based on the small quantity of drugs involved when sentencing a defendant for bringing contraband into a prison in violation of K.S.A. 21-3826. We review that question independently, without any required deference to the district court, because the question is one of statutory interpretation. See *State v. Spencer*, 291 Kan. 796, 807, 248 P.3d 256 (2011). So the question before us is: Can the small quantity of drugs in a prison-contraband case constitute a substantial and compelling reason to depart under K.S.A. 21-4716(c)(1)(E) because the degree of harm is significantly less than typical for such an offense?

The State argues that because the law bans all contraband, no matter the quantity, that having a small quantity is just as bad as a large one—all contraband is inherently dangerous. It's certainly true that the law forbids any contraband in prison, regardless of amount. But we see no reason that the quantity of drugs may not be taken into account as a sentencing-departure factor, just as it may be in nonprison cases involving drug possession. See *State v. Davis*, 262 Kan. 711, 941 P.2d 946 (1997) (finding that district court could enter upward departure sentence in part based on large quantity of drugs involved).

We note too that our court has previously held that a downward-durational-departure sentence could be given based on the small quantity of drugs involved in a prison-contraband case. In an unpublished decision in another case from Reno County, our court affirmed a downward-departure sentence of 20 months, rather than the guidelines' 40- to 46-month range, when the inmate possessed only two small marijuana cigarettes and the district court had found that a substantial and compelling reason to depart. *State v. Myers*, No. 90,525, 2004 WL 1176634 (Kan. App. 2004) (unpublished opinion). In that opinion, our court provided a cogent rejection of the State's argument that quantity should not be an available departure factor since the possession of any contraband violates the law:

"The issue is not what is required for a conviction, but what is typical in such a conviction. Myers was convicted under K.S.A. 2003 Supp. 21-3826, which defines traffic in contraband in a correctional institution. It covers not only posses-

sion, but other activities such as bringing contraband into the institution, sending contraband from the institution, and distributing contraband within the institution. Apparently Myers was not a dealer but an end-user at the end of the distribution chain. Myers' possession of two small marijuana cigarettes was a valid departure factor under K.S.A. 2003 Supp. 21-4716(c)(1)(E)." 2004 WL 1176634, at *2.

We conclude that the possession of only a small quantity of drugs constitutes a valid factor upon which a departure sentence *may* be entered on a prison-contraband conviction.

We express no opinion on whether the district court actually should grant a departure sentence to Warren. That is a discretionary call to be made by the district court, not the appellate court. See *Spencer*, 291 Kan. 796, Syl. ¶ 6. But the district court in Warren's case wrongly concluded that it could not even consider this issue. We therefore remand for resentencing so that the district court may properly exercise the discretion given to it by statute.

III. *There Was No Violation of Warren's Speedy-Trial Rights.*

Warren's final argument is that his speedy-trial rights were violated because he was not brought to trial within the time limits set by the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.* That act provides speedy-trial rights to prisoners being held in Kansas. Under the act, once a prisoner against whom a Kansas criminal charge is pending asks for final disposition of the charge, the State must bring the case to trial within 180 days, subject to certain exceptions. See K.S.A. 22-4301; K.S.A. 22-4303; *State v. Watson*, 39 Kan. App. 2d 923, Syl. ¶¶ 2, 4, 186 P.3d 812, *rev. denied* 287 Kan. 769 (2008).

The district court may grant continuances and extend the 180-day deadline "for good cause shown in open court," so long as the prisoner or his or her attorney is present and the prisoner's attorney has received notice and has an opportunity to be heard. K.S.A. 22-3403. Continuances granted either to the defendant or to the State under these circumstances will extend the 180-day deadline. *Watson*, 39 Kan. App. 2d 923, Syl. ¶ 4.

Only a few facts need to be noted. Warren filed a request for final disposition of the charges against him on May 18, 2009. After preliminary hearing and arraignment, the court set the case for

jury trial on October 27, 2009, which was 162 days after Warren's request for final disposition and thus within the 180-day deadline.

But less than 3 weeks before trial, Warren's attorney filed a motion to withdraw, stating that there had been a breakdown in communication between attorney and client and that Warren wanted a new attorney. Warren and his attorney appeared before the court at a hearing held October 23, 2009, and Warren confirmed that he couldn't communicate with his present attorney and wanted a new one appointed.

The State said that it would have no objection to Warren's request for new counsel if he waived his speedy-trial rights; the prosecutor said that the case needed to be tried by November 1. (The actual deadline appears to have been November 14, which was 180 days after May 18.) The district court then began to make an inquiry of Warren about a possible waiver, but Warren interrupted and said he was waiving his speedy-trial rights:

"THE COURT: Well, but Waddell, you—you're going to waive your right—
"THE DEFENDANT: Yes, I'm waiving the rights to speedy trial."

The court then granted Warren's attorney's motion to withdraw and appointed a new attorney, who was present in the courtroom, to represent Warren. That attorney asked that the trial be reset on the court's calendar "as soon as possible," and Warren said—in response to the court's inquiry—that doing so would be acceptable to him. The court ultimately reset the jury trial for January 26, 2010 (though, after the potential jurors had reported to court that morning, Warren waived his jury-trial right and proceeded with a trial to the court).

Warren argues on appeal that the waiver of his speedy-trial rights was made hastily and that he didn't fully understand his rights. But the 180-day time limit under the Uniform Mandatory Disposition of Detainers Act is extended whenever a continuance request is granted in open court with notice to the prisoner's attorney and an opportunity to be heard. See *Watson*, 39 Kan. App. 2d 923, Syl. ¶ 4. Here, the first trial setting was continued because of the defendant's motion to change attorneys, and the continuance was granted in open court at a hearing set specifically to consider de-

fense counsel's withdrawal motion, and all parties had the chance to be heard. We find no violation of Warren's speedy-trial rights.

The sentence entered by the district court is vacated, and the case is remanded with directions to resentence the defendant in accordance with this opinion. The judgment of the district court is otherwise affirmed.